UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES E. MCMILLAN III, <br><br> Plaintiff, <br><br> v. <br><br> DISTRICT OF COLUMBIA BOARD OF ELECTIONS, <br><br> Board. | Civil Action No. <br> 1:14-cv-00939 (BAH) <br><br> Judge Beryl A. Howell |

**MEMORANDUM OPINION**

The plaintiff, James E. McMillan III, proceeding *pro se*, claims to be the "party head" of a political party that has appeared on the ballot in the State of New York in past elections for Governor and Mayor of New York City.  Compl. at 1, Ex. B, ECF No. 1-1.  He initiated this lawsuit against the District of Columbia Board of Elections ("the Board"), requesting a change in the name of a slate of affiliated candidates (the "Slate") for election to the District of Columbia's Democratic Party committee even though that election occurred over two months before the filing of the Complaint.  The Board has moved to dismiss the Complaint on the grounds that the plaintiff lacks standing and, alternatively, fails to state a claim upon which relief may be granted. *See* Def.'s Mot to Dismiss at 1, ECF No. 6.[1]  For the reasons set forth below, the Board's motion to dismiss is granted.

---

[1] The Board has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) but dismissal for lack of standing is a "defect of subject matter jurisdiction" and, therefore, is properly brought pursuant to Rule 12(b)(1).  *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) ("the defect of standing is a defect in subject matter jurisdiction").

**I.     BACKGROUND**

The facts in this case are not in material dispute.  The Board is in charge of administering elections of "members and officials of local committees of political parties." D.C. Code § 1-1001.01(4).  On November 18, 2013, the local committee of the D.C. Democratic Party, pursuant to D.C. Code Ann. § 1-1001.10(a)(1), issued a party plan for the April 2014 primary election that provided for the selection of Democratic Party committee members by slate.  Def's Mem. Supp. Mot. Dismiss ("Def.'s Mem.") at 3, ECF No. 6-1.  A slate enables candidates to affiliate with one another by running on a common platform if the group of candidates secures a requisite number of signatures and meets other minimum requirements.  *See* 3 DCMR § 1701.

The Slate at issue initially chose the name "DC for Progress, Raise the Wage."  Def.'s Mem. at 3.  After being informed that the name was too long to print on the ballot, the Slate approached the plaintiff, who apparently leads the "Rent is Too Damn High" party in New York, and requested to use the name in the D.C. Democratic Party committee election.  Compl. at 1.  The Director of the D.C. Board of Elections expressed concern that people, specifically seniors, might be upset with the D.C. Slate's chosen name.  Compl., Ex. A., ECF No. 1-1.  The Slate thereafter agreed to change the name of the Slate to the "Rent is Too Darn High."  *Id.*

According to the Complaint, thirty candidates ran under the "Rent is Too Darn High" Slate name in the April 1, 2014 election for seats on the Democratic Party committee in the District of Columbia and five were elected.  Compl. at 2.  Over two months after the election, the plaintiff filed this lawsuit seeking, among other things, to change the Slate's name to the "Rent is Too Damn High." *Id.* at 3.

## II.  LEGAL STANDARD

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'"  *Gunn v. Minton*, 133 S. Ct. 1059 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Indeed, federal courts are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist for us to hear each dispute.'"  *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. National Academy of Sciences*, 974 F.2d 192, 196 (D.C. Cir. 1992)).  For this reason, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (internal quotation marks omitted).  When the purported lack of jurisdiction stems from a lack of standing, however, the court "must assume that [the plaintiff] states a valid legal claim."  *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1029 (D.C. Cir. 2003).  The proponent of jurisdiction bears the burden of proving that it exists, *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008), and while "the district court may consider materials outside the pleadings," it must "still accept all of the factual allegations in [the] complaint as true."  *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citations and internal quotation marks omitted).

## III.  DISCUSSION

In this case, the plaintiff's Complaint references the "First Amendment's Free Speech and Establishment Clauses" and goes on to allege that the "candidates have been denied the right to use the name of 'The Rent is Too DAMN High,'" as the name of their Slate.  Compl. at 1.

The plaintiff "request[s] the word 'Damn' [be] granted to the DC Group Slate" and "the DC Group Slate name be changed to indicate their name of choice (The Rent is Too Damn High) on the Board of Elections in (D.C.)." *Id.* at 3. The Board contends that the plaintiff lacks standing to pursue this claim. Def.'s Mem. at 5-7. The Court agrees.

Article III of the Constitution restricts the power of federal courts to hear only "Cases" and "Controversies." U.S. CONST. art. III § 2. "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (alterations in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The Supreme Court has explained, "the irreducible constitutional minimum of standing contains three elements." *Defenders of Wildlife*, 504 U.S. at 560. The three-pronged standing test consists of the following: First, the plaintiff must have suffered an "injury in fact," i.e., "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (citations and internal quotation marks omitted). Second, there must be "a causal connection between the injury and the conduct complained of," i.e., the injury alleged must be fairly traceable to the challenged action of the Board. *Id.* Finally, it must be likely that the injury will be redressed by a favorable decision. *Id.* at 561. When declaratory or injunctive relief is sought, a plaintiff "must show he is suffering an ongoing injury or faces an immediate threat of [future] injury." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). The plaintiff fails to meet any element of this three-pronged standing test.

First, the plaintiff has not suffered an injury in fact. The plaintiff concedes: (1) he is "not a resident of the District of Columbia," Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at

1; (2) he "did not attempt to register" to vote in the election for which he seeks the Slate's name change, *id.*; and (3) he was not among the thirty-members of the Slate that ran for election, *id.* at 2. Accordingly, the plaintiff has not suffered a legally cognizable injury in fact because he is a non-resident who did not participate in the election and, thus, he was not precluded from running under the slate name of his choice nor was he impacted by the election or its results. *See* Def.'s Mem. at 6 ("The instant case presents a standing issue where a nonresident asserts an injury to a political party slate of which he is not a member."); *see also Sierra Club v. Morton*, 405 U.S. 727, 735 (1972) ("[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured."); *Bd. of Elections for D.C. v. Democratic Cent. Comm.*, 300 A.2d 725, 727 (D.C. 1973) (same).[2]

Despite conceding that he was not a candidate or registered voter in the 2014 D.C. Democratic Party election, the plaintiff insists that he has standing to bring this claim. In a convoluted series of statements, the plaintiff asserts that he "represent[s] the contingenticy [sic] of the 'Rent is Too Damn High Party' in the District of Columbia and the party's slate for the 30 candidates (members)" that did run in the election and also "provide[s] leadership and direction . . . as the leader of the Rent is Too Damn High Party." Pl.'s Opp'n at 1-2. As the Board correctly points out, the plaintiff "has conflated permission to use his party's name with having a political party contingent in the District of Columbia." Def.'s Reply in Supp. of Mot. to Dismiss ("Def.'s Reply") at 1, ECF No. 9. The plaintiff "has proffered no evidence that the Democratic Party

---

[2] The plaintiff's reliance on a case filed four years ago in the Eastern District of New York is unavailing. In that case, the plaintiff challenged New York State and New York City Boards of election for removing "the word 'Damn' from the [plaintiff's] party's name." *McMillan v. New York State Bd. of Elections*, No. 10-CV-2502 JG VVP, 2010 WL 4065434, at *1 (E.D.N.Y. Oct. 15, 2010) *aff'd*, 449 F. App'x 79 (2d Cir. 2011). Even if the plaintiff had standing to bring his claims in U.S. District Court in the Eastern District of New York as an eligible candidate for the "Rent is Too High" Party in the elections at issue in that case, this circumstance has no bearing on his standing in this case. By contrast to factual circumstance in the *McMillan* case, the plaintiff was not eligible for and did not seek to run under the Slate name "The Rent is Too Damn High" in the April Democratic Party primary election in the District of Columbia. *Id.* at *1-2.

slate at issue intended to be a contingent of his political party." *Id.* Indeed, the fact that the Slate felt the need to ask the plaintiff if it could use the name weighs against the contention that the Slate had any ongoing affiliation with the plaintiff and his political party in New York.

Without an injury, the plaintiff has no standing to pursue the instant matter. In any event, the plaintiff could not satisfy the remaining two-prongs of the standing test. The Slate agreed to change their name to the "Rent is Too Darn High," thereby severing any causation between the plaintiff's perceived injury and the Board's suggestion that the Slate forego using the plaintiff's party's name. *See* Compl., Ex. A.

Finally, the plaintiff falls far short of meeting the third standing requirement of redressability. This action comes too late to redress any injury that may have attended the Board's suggestion to alter the proposed Slate name of the "Rent is Too Damn High." As a result, whether the Board should have allowed the use of that name is immaterial. The plaintiff does not contest that the Slate at issue disbanded after the April 2014 election, Def.'s Mem. at 2, over two months prior to the filing of the plaintiff's Complaint. *See generally* Compl. The dissolution of the Slate, as the Board points out, makes the "likel[ihood]" that the plaintiff's putative injury will be "redressed by a favorable decision" zero. *See* Def.'s Mem. at 6 (citing *Lujan*, 504 U.S. at 560-61).

Moreover, even assuming *arguendo* that the plaintiff had standing, in so far as the Complaint seeks declaratory and/or injunctive relief, the case is moot because the Slate has disbanded and has demonstrated no intent to use the plaintiff's party's name in a future election. *See, e.g.*, *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) ("There is . . . no case or controversy, and a suit becomes moot, 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. —, —

, 132 S. Ct. 721, 726 (2013))); *Mykonos v. United States*, — F. Supp. 2d —, 2014 WL 3585323, at *3 (D.D.C. July 22, 2014) ("[A] federal court has no authority to give opinions upon moot questions.").

## IV.     CONCLUSION

For the foregoing reasons, the plaintiff lacks standing to pursue his claim.  Accordingly, the Board's motion to dismiss is granted, pursuant to Federal Rule of Civil Procedure 12(b)(1), and the Complaint is dismissed.

An order consistent with this Memorandum Opinion will be contemporaneously entered.

Date: December 9, 2014

_____
BERYL A. HOWELL
United States District Judge